### WICKWIRE *et al.* *v.* WIRE FABRIC CO.

*(Circuit Court, N. D. New York. December 24, 1889.)*

PATENTS FOR INVENTION—CONSTRUCTION OF CLAIM.

Letters patent No. 304,154, issued August 26, 1884, to Wickwire and another, are for the process of "applying a liquid solution or compound" to the rollers over which wire cloth was passed, for the purpose of drying the paint on the cloth, and preventing its adhesion to the rollers. The specifications stated that "any liquid solution or compound which will adhere to the rollers, and at the same time repel paint," would do, but that a solution of soap in water was found preferable. *Held,* that the patent was for the use of some other solution than mere water, as that use of water was well-known, and the use of water for drying the paint, and preventing its adhesion to the rollers, was no infringement.

In Equity. Bill for infringement of letters patent.

*R. H. Duell,* for complainants.

*Hale, Cowen & Buckley,* for defendant.

WALLACE, J. The process of this patent (No. 304,154, granted to Wickwire and another, August 26, 1884) relates to improvements in the manufacture of painted wire cloth. The specification states that formerly, in order to dry the paint upon the cloth quickly, it was customary to pass it over rollers in a heating chamber, thus drying the paint during the passage of the cloth; but this was disadvantageous, because the paint, before drying, was apt to be taken up by the rollers, thus leaving the cloth imperfectly painted. The improvement in the art of painting the cloth, which is termed a "process," and is the subject of the patent, consists in "applying a liquid solution or compound" to the rollers. The means for applying it are these:

"Below each roller is hung, or otherwise supported, a trough containing this liquid solution or compound, into which the roller dips while rotating, thus coating it with the solution or compound."

The specification states that "any liquid solution or compound which will adhere to the rollers, and at the same time repel paint," will answer, but a solution of soap in water has been found preferable. The claim is as follows:

"In the manufacture of painted wire cloth, the process herein described for preventing the paint with which the cloth has been treated from adhering to the carrying-roll, consisting in applying to such rolls a paint-repelling compound, as set forth."

The defendant employs metal rollers, through which a stream of water is passed to chill their surfaces and harden the constituents of the paint, so as to prevent adhesion; and at times the water of condensation arising from the atmosphere of the room settles upon these rollers sufficiently to assist in preventing the adhesion of the paint. The question in the case is whether this method of treating the painted wire cloth is an infringement of the patent. The patentees were not the first to employ similar mechanical means for a cognate use. The English patent of 1879 to Ritchie describes a method for coating or impregnating felt with resinous material, in which, after the felt has been coated by passing it between rollers, it passes to cooling cylinders, which are moistened by rotating in water troughs, to prevent the felt, while passing over them, from adhering. Thus, in that patent as well as the patent in suit, a sheet of material coated with resinoid matter is made to pass over a series of rollers, and is prevented from adhering thereto by having the surfaces of the rollers moistened through their rotation in troughs. The United States patent of 1880 to Metzler describes an apparatus for applying glue or size to muslin in rolls, for making window curtains, etc., in which the fabric, after passing a sizing roller, passes to drying drums, having a stream of cold water flowing through them, or having cold water applied to their surfaces, to prevent the size from adhering. Water acts as a paint repellant in all these instances, by intervening a thin film of non-adhesive material between the rollers and the paint, or the resinous or glutinous coating, of the fabric. Consequently, it would not be invention to apply water by the same mechanical means, to prevent the paint of wire-cloth from adhering to the rollers which had been used to

apply it, for preventing the resinous coating of felt, or the sizing of muslin, from adhering. It follows that, unless the process of the patent involves something more than the use of simple water to moisten the rollers and prevent the adhesion of the paint, it is destitute of patentable novelty. The process consists, according to the language of the claim, in applying "a paint-repelling compound" to the rollers. This hardly describes water, and neither that term nor the term "liquid solution" is an apt term to describe it. If the patentees had contemplated the use of simple water, there is no reason why they should not have said so; and, if they had, it is not improbable that they would not have obtained a patent. The claim must be construed as specifying the application of some other compound or solution than water to the rollers. Upon this construction of the patent, the defendant does not infringe. The proofs show that for a short time the defendant employed in its factory the apparatus and process of the patent, using oil or water, with other liquids, upon a single roller, as a paint-repelling compound. The infringement was very inconsiderable, and was without any profit to the defendant, or substantial injury to the complainant, and is not of sufficient consequence to be the basis of a decree for an accounting or an injunction. It suffices, however, to lead to a dismissal of the bill, without costs.